605 So.2d 1197 (1992)
SHOALS FORD, INC.
v.
Jerry W. McKINNEY, et al.
1902012.
Supreme Court of Alabama.
August 7, 1992.
Rehearing Denied October 9, 1992.
*1198 Lindsey Mussleman Davis of Holt, McKenzie, Holt & Mussleman, Florence, for appellant.
Steven D. Tipler, Birmingham, for appellees.
PER CURIAM.
Shoals Ford, Inc., appeals from a judgment entered on a jury verdict awarding $50,000 in punitive damages, in this action to recover only punitive damages, based on alleged wantonness and fraud in connection with the sale of a pickup truck. We affirm.
Esta L. and Jerry W. McKinney purchased a pickup truck from Shoals Ford for their son, John. The sales representative with whom the McKinneys dealt represented *1199 to the McKinneys that the truck was "new." No discussion took place as to whether any body work or repairs had been done on the truck. A few weeks later, the McKinneys discovered that the paint on their truck was chipping and that there were dents in the hood. The McKinneys later learned that the truck had been damaged by hail and had been subsequently repaired and repainted. This lawsuit followed.[1]
The following issues have been presented for our review:
"1) whether the verdict should have been set aside on the ground that the jury did not award either compensatory or nominal damages;
"2) whether the verdict should have been set aside on the ground that there was insufficient evidence to support a finding by the jury that the McKinneys had been injured, at least nominally, by the wrongful actions of Shoals Ford;
"3) whether the evidence was sufficient to support an award of punitive damages;
"4) whether the trial court erred to reversal in refusing to allow Shoals Ford to show that it had offered to either refund the McKinneys' money or repair their truck;
"5) whether the trial court erred to reversal in admitting the testimony of three witnesses concerning other false representations that had allegedly been made by representatives of Shoals Ford; and
"6) whether the trial court erred to reversal in failing to give certain written requested instructions to the jury."
The first issue is controlled by First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), and Caterpillar, Inc. v. Hightower, 605 So.2d 1193 (Ala.1992), wherein this Court held that an award of compensatory or nominal damages is not a prerequisite to an award of punitive damages. Approximately seven months before First Bank of Boaz was decided, a division of this Court had indicated in O.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala.1991), which is relied on by Shoals Ford, that an award of compensatory or nominal damages was a prerequisite to an award of punitive damages. O.K. Bonding was not cited to us in the briefs in First Bank of Boaz, and we overlooked it during our independent research in preparing an opinion in that case. As a result, we failed to address O.K. Bonding in that opinion. O.K. Bonding and First Bank of Boaz were distinguished in the opinion written by Justice Adams in Caterpillar, Inc. v. Hightower, supra. In the present case, as it was in First Bank of Boaz and Caterpillar, Inc. v. Hightower, it is clear from the record that the jury found that the plaintiff had been injured by the defendant's actions. In the present case, the plaintiffs sought no compensatory damages, but only punitive damages, and the trial court correctly charged the jury that it could not award punitive damages unless it found that the plaintiffs had been "injured" or "damaged" by a false representation of Shoals Ford's sales representative and that that representation had been made knowingly and with the intent to deceive, or recklessly or wantonly.
We are satisfied from our review of the record in the present case that the evidence was sufficient to support findings by the jury that 1) the McKinneys were injured, at least nominally, by the representation of Shoals Ford's sales representative that the truck was "new" and 2) that that representation was made knowingly and with the intent to mislead the McKinneys, or recklessly or wantonly. Therefore, there is no merit in the second and third issues raised by Shoals Ford.[2]
*1200 As for the fourth issue, Shoals Ford argues that its sales representative should have been allowed to testify that he offered to either refund the McKinneys' money or have the truck repaired. We agree with the trial court, however, that this testimony pertained to settlement negotiations that had taken place between the parties and, therefore, that it was inadmissible under the rule excluding evidence of settlement negotiations. See Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321 (Ala.1987) ("The general rule is that [evidence of] offers of compromise by one party to another in a civil action, whether before or after the litigation is begun, is inadmissible").
With respect to the fifth issue, Shoals Ford argues that the trial court erred in allowing three of the McKinneys' witnesses to testify concerning false representations that representatives of Shoals Ford had allegedly made to them. The record indicates that these witnesses testified that representatives of Shoals Ford had made false representations to them within approximately nine months of the McKinney transaction concerning the physical condition of the vehicles that they had purchased. Lynn Clements, a 79-year-old man with failing eyesight, testified that Shoals Ford sold him a hail-damaged pickup truck approximately two months after the McKinney transaction without disclosing the fact that the truck had been damaged and then repaired and repainted. Michelle Higgins testified that Shoals Ford sold her a Ford Mustang automobile approximately five months before the McKinney transaction without disclosing the fact that it had previously suffered hail damage and had subsequently been repaired and repainted. Wanda Woods testified that she purchased a used truck from Shoals Ford approximately nine months after the McKinney transaction and that a representative of the company falsely represented to her at the time of the purchase that the vehicle had never been damaged and repaired. Evidence of similar fraudulent acts is admissible to show a fraudulent intent, plan, or scheme, provided that the acts sought to be proven meet the requirements of similarity in nature and proximity in time. See Harris v. M & S Toyota, Inc., 575 So.2d 74 (Ala.1991); see, also, C. Gamble, McElroy's Alabama Evidence § 70.03(1) (4th ed. 1991), and the cases cited therein. All of the fraudulent acts testified to by the three witnesses in the present case were similar in nature to the act made the basis of the McKinneys' fraud claim (i.e., all of the acts concerned the failure of Shoals Ford to disclose that a vehicle had been damaged and repaired prior to its sale). Likewise, all of the acts testified to by these witnesses occurred within a period extending from approximately five months before the McKinney transaction to approximately nine months after the McKinney transaction; we consider this sufficiently close in time to the McKinney transaction to create a reasonable inference that Shoals Ford was engaging in a pattern or practice of fraud at the time of the McKinney transaction. See Davis v. Davis, 474 So.2d 654 (Ala.1985). We also note that the trial court gave a limiting instruction to the jury both immediately following the testimony of these three witnesses and in its oral charge (i.e., the trial court told the jury that evidence of similar fraudulent acts was admissible to show a fraudulent intent, plan, or scheme, but that such evidence, standing alone, was not sufficient to establish that Shoals Ford had defrauded the McKinneys). See Davis v. Davis, at 655. The trial court did not err in admitting the testimony of these witnesses.
Finally, Shoals Ford contends that the trial court erred to reversal in not instructing the jury as to the proper measure of compensatory damages and in not providing a space on the verdict form for an award of compensatory damages to be designated. Shoals Ford also argues that the trial court erred in denying several of its written requested jury instructions. The record shows that the McKinneys did not *1201 make a claim for compensatory damages and that the trial court specifically told the jury that no such claim had been made. Consequently, the trial court did not err in refusing to instruct the jury on the proper measure of compensatory damages or in refusing to provide a space on the verdict form for compensatory damages to be designated. Furthermore, our review of the record indicates that the written requested instructions submitted by Shoals Ford were properly denied because they either were confusing or had been sufficiently covered in the trial court's oral charge. See Rule 51, Ala.R.Civ.P.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and KENNEDY, JJ., concur.
HOUSTON, J., concurs in part and concurs in the result in part.
INGRAM, J., concurs specially.
MADDOX, ALMON and STEAGALL, JJ., dissent.
HOUSTON, Justice (concurring in part and concurring in the result in part).
I do not think that First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), which I authored, can be reconciled with O.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala. 1991), as the majority holds. I write separately, however, because I disagree with Justice Almon's suggestion that, as between the two cases, First Bank of Boaz should be the one overruled. As I wrote in First Bank of Boaz, an inflexible rule requiring an actual award of compensatory or nominal damages as an absolute prerequisite to an award of punitive damages, even in cases where jury verdicts separate punitive damages from compensatory or nominal damages, has no basis in precedent in this state and would run counter to the interests of justice. Furthermore, such a rule, contrary to the assertion made by Justice Almon in his dissent, would, in my opinion, violate the plaintiff's right under § 11 of the Alabama Constitution to a trial by jury.
The logic and fairness of the rule set out in First Bank of Boaz is clearly illustrated in the present case, where the McKinneys did not even make a claim for compensatory damages and the jury was not instructed that it could award nominal damages. The jury was instructed, however, that it could not award punitive damages unless it found that the McKinneys had been "injured" or "damaged" by a false representation of Shoals Ford's sales representative and that that representation had been made knowingly and with an intent to deceive, or recklessly or wantonly.
After carefully reconsidering our decisions in O.K. Bonding and First Bank of Boaz, I am convinced that the rule stated in First Bank of Boaz is the correct one, and, faced with a choice between the two cases, I would overrule O.K. Bonding to the extent that it is inconsistent with First Bank of Boaz.
INGRAM, Justice (concurring specially).
I agree with the majority that an award of compensatory or nominal damages is not a prerequisite to an award of punitive damages, and I concur in the judgment affirming the punitive damages award in this case. However, I also agree with Justice Almon's assertion that a defendant is entitled to have the jury specifically decide the issue of whether the plaintiff has been injured before deciding whether to impose punitive damages against the defendant.
I do not think that reversal is warranted in this case, because the jury was instructed that it could not award punitive damages unless it found that the plaintiffs had been injured or damaged by the defendant's actions. I think that the best way to resolve future conflicts of this nature would be to present the jury with a special verdict form in cases where only punitive damages are requested.
I believe that submitting a special verdict form to the jury in cases where only punitive damages are being sought would require the jury to make the same type of determination that it would have to make *1202 in cases where both compensatory and punitive damages are being sought. In other words, the jury would first be required to focus on whether the plaintiff has met his burden of establishing the damage or injury element of his particular tort action. If the jury finds damage or injury, as a special verdict form would provide, it could then move on to consider whether the defendant's conduct was so wrongful as to warrant the imposition of punitive damages.
Submitting a special verdict form to the jury would eliminate the need for juries to go through the ritual of awarding nominal damages, as Justice Almon would have them do, but still make certain that the jury considered the issue of whether, under the facts of the case, the plaintiff had been injured or damaged by the defendant's wrongful conduct. I think that having a jury make such a determination would eliminate the potential for violation of a defendant's constitutional right to a jury trial.
MADDOX, Justice (dissenting).
I agree with Justice Almon that First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), and O.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala.1991), cannot be reconciled, although the Court attempts to reconcile the two cases in Caterpillar, Inc. v. Hightower, 605 So.2d 1193 (Ala.1992). I also agree with Justice Almon that First Bank of Boaz v. Fielder was incorrectly decided. I dissented in that case, without writing an opinion, but the reason for my dissent was the holding in that case that an award of compensatory or nominal damages was not a prerequisite to an award of punitive damages.
This case presents an excellent example of the reason for the rule. As Justice Almon points out, the truck admittedly suffered hail damage, but does that automatically mean that the plaintiffs suffered some loss or damage? Of course not. Whether the plaintiffs suffered any loss or damage was sharply disputed. In fact, there was some evidence that the plaintiffs suffered none. While I would agree that a plaintiff can waive his or her right to recover compensatory or nominal damages, I believe that to support an award of punitive damages in a case like this, the jury must find that the plaintiff suffered at least a nominal loss or damage as a result of the alleged misrepresentation. Here, the defendant specifically objected to the trial court's instructions and to the form of the jury verdict, thereby specifically preserving the legal issue for our review. I believe that the Court errs when it determines, as a matter of law, that the jury found that the plaintiffs suffered loss or damage in this case.
There is one further reason why I believe that the defendant is entitled to a new trial in this case. The Legislature has specifically provided, in Ala.Code 1975, § 6-11-1, that "[i]n any civil action based upon tort..., except actions for wrongful death ..., the damages assessed by the factfinder shall be itemized" as "Past damages" "Future damages" and "Punitive damages." Although I recognize that this Court, by judicial decision or Court rule, has the power to make rules governing the practice and procedure to be used in courts, including the form of the jury's verdict, that power can be circumscribed by the Legislature. Amendment 328, § 6.11, specifically provides that the Legislature, by a general act of statewide application, can alter or change a rule of procedure adopted by this Court. It is my opinion that the Legislature has specifically provided, in an Act with statewide application, the form of the jury's verdict in tort actions such as the one filed in this case. The requirements of that statute, in my judgment, are consistent with the holding of this Court in O.K. Bonding, Inc. I continue to believe that First Bank of Boaz was incorrectly decided. Consequently, I must respectfully dissent.
ALMON, Justice (dissenting).
Respectfully, I think the Court is erring in allowing the submission to the jury of a cause of action with the specific, deliberate exclusion of the possibility of an award of compensatory damages. Although the *1203 Court has attempted in Caterpillar, Inc. v. Hightower, 605 So.2d 1193 (Ala.1992), to distinguish First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), from O.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala.1991), I address my principal remarks in this matter to this case, because it presents a clearer example of the error.
At the McKinneys' request, the court submitted the cause to the jury without an opportunity for the jury to award compensatory damages. Shoals Ford objected both to the jury instructions and to the verdict form:
"[A]s to the verdict form, the only objection we have is that there is not a place for compensatory damages. Second, we object to there being no charges to compensatory damages. We feel without that you cannot go to the punitive aspect of the claim."
The trial court overruled the objection. The jury returned the following verdict:
"We, the Jury, find in favor of the plaintiffs, Jerry W. McKinney, John McKinney & Esta L. McKinney and against the defendant, Shoals Ford, Inc., a Corporation and assess plaintiffs' damages as follows:
 "$50,000.00 punitive damages"
Shoals Ford renewed its objection as a ground of its motion for JNOV or new trial.
An essential element of a cause of action in tort (except for wrongful death) is proof that the plaintiff has suffered a compensable injury. An award of compensatory or at least nominal damages is the means by which a jury makes a finding that the plaintiff has proved this element of his cause of action. Certainly, a jury could not properly return a verdict finding for the plaintiff but awarding no damages in a case that did not allow for punitive damages. Such a verdict would be inconsistent and a new trial would be due to be granted. Northeast Alabama Reg. Med. Ctr. v. Owens, 584 So.2d 1360, 1366 (Ala.1991); Moore v. Clark, 548 So.2d 1352 (Ala.1989); Clements v. Lanley Heat Processing Equipment, 548 So.2d 1345 (Ala.1989); Ward v. Diebold, Inc., 486 So.2d 1261 (Ala. 1986); Stinson v. Acme Propane Gas Co., 391 So.2d 659 (Ala.1980); Odom v. Mississippi Valley Title Ins. Co., 582 So.2d 1154 (Ala.Civ.App.1991); Monteleone v. Trail Pontiac, Inc., 395 So.2d 1003 (Ala.Civ.App. 1980), cert. den., 395 So.2d 1005 (Ala.1981).
When a jury has said that a plaintiff has not suffered an injury that would support compensatory or at least nominal damages, I think it is a violation of the defendant's constitutional right to jury trial for an appellate court to say that the plaintiff has suffered some nominal injury that will support punitive damages. Ala.Const. 1901, § 11.
For the proposition that punitive damages could not be recovered unless compensatory damages were awarded in at least a nominal amount, O.K. Bonding cited only Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975). The proposition was equally well established, however, in other cases, such as Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38 (Ala.1990); Coastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala.1987); Youngblood v. Bailey, 459 So.2d 855 (Ala.1984); Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, appeal after remand, 451 So.2d 801 (Ala.1983); Walker v. Cleary Petroleum Corp., 421 So.2d 85 (Ala.1982); Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala.1981); Skipper v. South Central Bell Tel. Co., 334 So.2d 863 (Ala. 1976); Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 300 So.2d 94 (1974); and Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970). Contrary to the statement in First Bank of Boaz that the opinion was merely interpreting those cases and was consistent with them, it is my opinion that First Bank of Boaz actually overruled Mid-State Homes and the other cases cited above.
As the opinion in First Bank of Boaz pointed out, many of the older cases state only that an evidentiary showing of compensable injury supported a verdict and judgment that included punitive damages. For example: "Since at least nominal damages would have been proper, the jury was within its province to award punitive damages." *1204 Coastal Concrete, supra, 503 So.2d at 830. "Alabama allows recovery of punitive damages when the plaintiff shows that he suffered, at least, nominal damage." Gulf Atlantic Life, supra, 405 So.2d at 916. "To support an award of punitive damages it must be shown that Johnson suffered, at least, nominal damage." Mid-State Homes, supra, 294 Ala. at 65, 311 So.2d at 317.[3] The Court in Maring-Crawford Motor Co., supra, said the following:
"While some jurisdictions have held that compensatory damages are essential to support an award of exemplary or punitive damages, it is the doctrine of our cases, as well as that of a substantial number of other states, that an award of nominal damages authorizes, in the discretion of the trier of fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompan[y] the invasion of the rights of another. It would appear in such situations that `nominal damages' are considered within the context of `actual damages.'"
285 Ala. at 486, 233 So.2d at 492.
Those statements were made, however, in the context of jury verdicts that awarded damages in lump sums; they did not separate punitive damages from actual, compensatory, or nominal damages. In this case, as in O.K. Bonding and First Bank of Boaz, the verdicts are separated into an award for compensatory damages and an award for punitive damages. In each case, the jury awarded punitive damages on a count or for a party as to which the jury did not award any compensatory, nominal, or actual damages. The legislature in 1987 enacted a statute with a provision for juries to separate past damages, future damages, and punitive damages.[4] Thus, these recent cases are among the first in which there was routinely a separation of verdicts into compensatory and punitive damages.
In the earlier cases, the Court could simply assume that there was a compensatory damages component of a general verdict, at least in a nominal amount, so the Court focused on the question of whether the evidence would support such an award. Now that the verdicts specify the amount of compensatory damages, it is not appropriate to inquire whether the evidence would have supported an award of compensatory damages if the jury did not in fact make such an award. I think the Court in First Bank of Boaz overlooked this change and its significance in limiting the extent to which the evidence-focused language I have quoted above is pertinent to present-day practice.
In short, I do not think the Court ever meant to say, before First Bank of Boaz, that an award of punitive damages, where the jury specifically declined to award compensatory damages, was permissible.[5] When awards did not separate compensatory from punitive damages, the Court, enforcing the presumption in favor of jury verdicts, presumed that the jury had *1205 awarded compensatory damages if the evidence supported such an award. Now that there is a separation, the Court cannot presume that the jury must have intended to find that the plaintiff had suffered at least nominal damages if the jury returns a compensatory damages verdict awarding zero damages.
In the instant case, the evidence was sharply conflicting as to whether the McKinneys had been injured. For example, there was evidence that the price they paid was a low price even for a hail-damaged vehicle. Although the jury could certainly have found that the McKinneys suffered nominal or even actual damages, the instructions specifically prevented the jury from returning a verdict that made such a finding. I think this is improper practice, for the reasons stated above. I would overrule First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), reverse the judgment in this case, and remand the cause for a new trial.
STEAGALL, Justice (dissenting).
I respectfully dissent for the same reasons I stated in my dissent in The Booth, Inc. v. Miles, 567 So.2d 1206 (Ala.1990).
NOTES
[1] Whether the representation of a previously damaged vehicle, for which there has been no prior retail purchaser, as "new" is fraudulent is usually a question of fact for the jury. See Boulevard Chrysler-Plymouth, Inc. v. Richardson, 374 So.2d 857 (Ala.1979).
[2] We note that Shoals Ford does not take the position that, because the truck had not been the subject of a prior retail purchase, it considered the truck to be "new." See the dissenting opinion of former Chief Justice Torbert in Boulevard Chrysler-Plymouth, Inc. v. Richardson, 374 So.2d 857, 860-61 (Ala.1979). Shoals Ford argues only that its sales representative did not know that the truck had suffered hail damage. However, the evidence that he did know was sufficient to warrant submission of that question to the jury.
[3] These opinions also discussed the proof of wrongful conduct necessary to support an award of punitive damages, but I have omitted those portions of the quotations, since that point is not at issue here.
[4] Code 1975, § 6-11-1. This Court, in Clark v. Container Corp. of America, 589 So.2d 184 (Ala. 1991), held unconstitutional most of the Structured Damages Act, §§ 6-11-1 through -7, enacted by Act No. 87-183, Ala. Acts 1987. Section 7 of Act No. 87-183 provided, however, that "If any section, clause, provision, or portion of this act shall be held invalid or unconstitutional by any court of competent jurisdiction, such holdings shall not affect any other section, clause, or provision of this act which is not in or of itself invalid or unconstitutional." The reasoning of Clark does not necessarily reach the "itemized verdict" provisions of § 6-11-1, so I express no opinion as to whether § 6-11-1 is in force and effect in the absence of a case presenting that issue. Certainly, the jury need not return an itemized verdict in the absence of a timely request by a party for such a verdict.
[5] Of course the case of wrongful death awards is uniquely different, because this Court long ago held that such awards are made not to compensate for the value of the life lost but to punish the wrongful conduct. Louis Pizitz Dry Goods Co. v. Yeldell, 213 Ala. 222, 104 So. 526 (1925), aff'd, 274 U.S. 112, 47 S.Ct. 509, 71 L.Ed. 952 (1927); Richmond & Danville R.R. v. Freeman, 97 Ala. 289, 11 So. 800 (1892); South & North Alabama R.R. v. Sullivan, Adm'r, 59 Ala. 272 (1878); Savannah & Memphis R.R. v. Shearer, 58 Ala. 672 (1878).